# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TANYA SILVA,

     **Plaintiff,**

vs.                                          **No. 2:15-cv-1046-MCA-SMV**

**BOARD OF COUNTY COMMISSIONERS**
**FOR THE COUNTY OF ROOSEVELT**
and the **ROOSEVELT COUNTY ADULT**
**DETENTION CENTER**;

**DAVID CASINOVA, Former Administrator**
of the **ROOSEVELT COUNTY**
**DETENTION CENTER for the BOARD**
**OF COUNTY COMMISSIONERSFOR**
**ROOSEVELT COUNTY, in his individual**
**and official capacities;**

**DREW WHITE, a correctional officer employed**
**by BOARD OF COUNTY COMMISSIONERS**
**FOR THE COUNTY OF ROOSEVELT at**
**THE ROOSEVELT COUNTY ADULT**
**DETENTION CENTER, in his individual**
**capacity;**

**CAMERON RIDENOUR, correctional officer**
**employed by BOARD OF COUNTY**
**COMMISSIONERS FOR THE COUNTY**
**OF ROOSEVELT at THE ROOSEVELT**
**COUNTY ADULT DETENTION CENTER,**
in his individual capacity;

**DIVINE ALCANZO**, correctional officer
**employed by BOARD OF COUNTY**
**COMMISSIONERS FOR THE COUNTY**
**OF ROOSEVELT at THE ROOSEVELT**
**COUNTY ADULT DETENTION CENER,**
in his individual capacity;

1

**JANE-JOHN DOES 1-5 correctional
Officer employed by BOARD OF COUNTY
COMMISSIONERS FOR THE COUNTY OF
ROOSEVELT at THE ROOSEVELT COUNTY
ADULT DETENTION CENTER, in each of their
individual capacities; and JANE-JOHN DOES
6-10, medical providers at RCADC,
including both natural and corporate
"persons", in each of their individual capacities;**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

  **THIS MATTER** is before the Court on *Defendants' Motion for Judgment on the Pleadings, Motion for Summary Judgment and for Qualified Immunity and Memorandum of Support* filed January 5, 2017 [Doc. 58] and on *Defendant Detention Center's Motion to Dismiss Count 1 of Plaintiff's Complaint* filed January 5, 2017 [Doc. 60]. The Court has considered the parties' submissions, the relevant law, the record, and is otherwise fully advised in the premises. The Court finds that *Defendants' Motion for Judgment on the Pleadings, Motion for Summary Judgment and for Qualified Immunity and Memorandum of Support* is well taken and shall be granted. The Court finds that *Defendant Detention Center's Motion to Dismiss Count 1 of Plaintiff's Complaint* is moot, and shall be denied as moot.

## BACKGROUND

  The events giving rise to this lawsuit occurred when Plaintiff Tanya Silva, a pretrial detainee at the Roosevelt County Adult Detention Center (the Detention Center), fell as she got out of the Detention Center's transport van. [Doc. 4 ¶¶ 3, 13, 30-31] Defendant Board of County Commissioners for the County of Roosevelt (the Board)

operated and controlled the Detention Center and employed each of the named individual Defendants. [Doc. ¶¶ 4-5] Defendant David Casinova was the director of the Detention Center. [Doc. 4 ¶ 6] Defendants Drew White, Cameron Ridenour, and Divine Alcanzo were correctional officers. [Doc. 4 ¶¶ 7-9]

The following facts are undisputed. On the day that she fell, Plaintiff was incarcerated at the Detention Center as a pretrial detainee. [Doc. 58 ¶¶ 1-2; Doc. 63 ¶¶ 1-2] Plaintiff—who was scheduled for a bond hearing and four other inmates were transported in a van from the Detention Center to the Roosevelt County Municipal Courthouse by White and Ridenour. [Doc. 58 ¶ 4; Doc. 58-1 p. 2; Doc. 63 ¶ 4; Doc. 4 ¶¶ 14-15] Owing to the height of the van, there was approximately twelve inches between the floor of the van and the floor of the Detention Center's sally port. [Doc. 4 ¶ 21; Doc. 58-5 (video)] To assist detainees in getting into and out of the van, the Detention Center provided a step stool that the detainees used to step into and out of the van. [Doc. 4 ¶¶ 28-29; Doc. 58-5 (video)]

Plaintiff never asked to be assisted in getting into or out of the van. [Doc. 58 ¶ 7; Doc. 58-2 ¶¶ 6-7; Doc. 63 ¶ 7] Unassisted, Plaintiff got into, out of, and back into the van without falling. [Doc. 58 ¶ 6; Doc. 58-2 ¶¶ 2-8; Doc. 63 ¶ 6] Having returned to the Detention center from the courthouse, Plaintiff fell off the stool as she was getting out of the van; the stool did not break or collapse. [Doc. 58 ¶ 8; Doc. 58-1 ¶ 7; Doc. 58-5 (video); Doc. 63 ¶ 8]

After Plaintiff fell, White and Ridenour immediately helped her and asked whether she was "okay." [Doc. 58 ¶ 9; Doc. 58-5 (video); Doc. 63 ¶ 9] Plaintiff had been hurt by

the impact of the fall, but she felt embarrassed so she "kind of chuckled it off." [Doc. 58 ¶ 10; Doc. 58-1 ¶ 7; Doc. 63 ¶ 10] Plaintiff told White and Ridenour that there "was something very wrong with her left leg or knee" and, unassisted, she made her way to the booking area. [Doc. 58 ¶¶ 11-12; Doc. 58-1; Doc. 58-5 (video); Doc. 63 ¶¶ 11-12] White, Ridenour, and Alcanzo each separately told Plaintiff that they would call for medical staff to evaluate Plaintiff. [Doc. 58 ¶¶ 13-15; Doc. 63 ¶¶ 13-15] Within an hour of falling, and before medical staff attended to her, Plaintiff bonded out of the Detention Center. [Doc. 58 ¶ 15; Doc. 58-2 ¶ 9; Doc. 63 ¶ 15]

Based on the foregoing, Plaintiff filed the present lawsuit. The *Complaint* is comprised of three claims: "Count I: Violation of Substantive Due Process" against all Defendants; "Count II: Violation of The Americans With Disabilities Act" (ADA) against all Defendants; and "Count III: *Monell* Claim under 42 U.S.C. § 1983 Resulting in the Deprivation of Civil Rights Municipal Liability" against Casinova in his official capacity and the Board. [Doc. 4 p. 9-13]

In *Defendants' Motion for Judgment on the Pleadings, Motion for Summary Judgment and for Qualified Immunity and Memorandum of Support*, Defendants seek the following relief. Pertaining to Count I, as it relates to Casinova and the County,[1] Defendants seek judgment on the pleadings on the ground that the *Complaint* fails to state a claim. [Doc. 58 p. 3] Pertaining to Count II as it relates to White, Ridenour, Alconzo, and Casinova in his individual capacity, Defendants seek judgment on the pleadings on

---

[1] Defendants' argument applies, as well, to the Detention Center; however, the Detention Center is not a party in this lawsuit. [See Doc. 64 p. 2] The non-party status of the Detention Center is addressed in Part II of this Opinion.

the ground that the ADA does not provide a cause of action against these individuals. [Doc. 58 p. 5-6]

Further, in regard to Count I against White, Ridenour, Alcanzo, and Casinova in his individual capacity Defendants seek summary judgment on the basis of qualified immunity. [Doc. 58 p. 8-12] In regard to Count II against the municipal Defendants (the Board and Casinova in his official capacity), Defendants seek summary judgment on the ground that Plaintiff cannot satisfy the evidentiary requirements of an ADA claim. [Doc. 58 p. 13-15] Finally, as to Count III, Defendants seek summary judgment on the ground that Plaintiff did not suffer a deprivation of her constitutional rights, which circumstance precludes her claim of municipal liability. [Doc. 58 p. 15-16]

In Part I of the Discussion, the Court addresses the foregoing. Although Defendants' Motion is organized by the type of relief sought—*i.e.*, judgment on the pleadings versus summary judgment, the Court considers all arguments pertaining to each count of the *Complaint* in a count-by-count format.

In Part II of the Discussion, the Court addresses *Defendant Detention Center's Motion to Dismiss Count I of the Complaint*. [Doc. 60].

## I.    *Defendants' Motion for Judgment on the Pleadings, Motion for Summary Judgment and for Qualified Immunity and Memorandum of Support*

### A.  Standards of Review

**Motion for Judgment on the Pleadings**

In ruling on a motion for judgment on the pleadings, the Court applies the same standard that applies to a motion to dismiss pursuant to Rule 12(b)(6). *Colony Ins. v.*

*Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).To withstand a motion to dismiss, a complaint must contain sufficient allegations of fact, taken as true, "to state a claim for relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). In applying this test, the Court accepts as true "all plausible, non-conclusory, and non-speculative" facts alleged in the complaint. *Shrader v. Al Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Accordingly, in ruling on a Rule 12(b)(6) motion and, by extension in considering a motion for judgment on the pleadings, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest [that] the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

**Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure allows summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(c). An

issue is "genuine" when the evidence before the Court is such that a reasonable jury could return a verdict in favor of the nonmovant as to that issue. *Anderson*, 477 U.S. at 248-52. A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* at 248.

It is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). Rather, the Court assumes the admissible evidence of the nonmovant to be true, resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *Hunt v. Cromartie*, 526 U.S. 541, 551-52 (1999).

## B. Count I

In Count I of the *Complaint*, Plaintiff claims that her Fourteenth Amendment right to substantive due process was violated when she was subjected to inhumane conditions of confinement and inadequate medical care. [Doc. 4 ¶¶ 49-58] Although Plaintiff's claim is brought pursuant to the Fourteenth Amendment because she was a pre-trial detainee instead of a convicted prisoner, the Eighth Amendment provides the benchmark for analyzing the claim. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).

**The Law Governing an Eighth Amendment Claim**

### Individual Defendants

The Eighth Amendment "imposes duties on prison officials [to] provide humane conditions of confinement" and "take reasonable measures to guarantee the safety of the

inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[A] prison official violates the Eighth Amendment only when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively 'sufficiently serious'" meaning that the "prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities[.]" *Id.* In a failure-to-prevent-harm claim, "the inmate must show that [she] is incarcerated under conditions posing a substantial risk of serious harm." *Id.*

Secondly, the "prison official must have a sufficiently culpable state of mind[,]" which, in a prison-conditions case "is one of deliberate indifference to inmate health or safety." *Id.* "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference entails "more than ordinary lack of due care for the prisoner's . . . safety." *Id.* at 835. The mere "presence of [an] objectively inhumane prison condition[]" does not, alone, provide a basis for liability. *Id.* at 838.

### The Municipality as a Defendant

"[I]n order to hold a municipality liable for an employee's constitutional violations, a plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation." *Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998).

**Analysis**

The Court construes Count I as alleging two distinct violations (1) a "conditions-of-confinement" deprivation based on the circumstances under which she was required to get into and out of the van; and (2) a deprivation of the right to adequate medical care based on the fact that she did not receive immediate medical attention after she fell. [Doc. 4 ¶¶ 39-46; Doc. 63 ¶ 11]  The former is brought against all Defendants, and the latter applies to White, Ridenour, and Alcanzo only.  [Doc. 63 p. 11]

**Plaintiff's Conditions-of-Confinement Claim**

As to the conditions of her confinement, Plaintiff's claim is centered mainly upon the presence of the step stool, but also relates to the manner in which Plaintiff was shackled which, Plaintiff alleges, restricted her movement and affected her ability to maintain her balance or break her fall.  [Doc. 4 ¶¶ 22, 26, 50-51, 53; Doc. 63 p. 10] Specifically, Plaintiff alleges that "[r]ather than meet their obligations to protect Plaintiff from known and obvious harm—harm that Defendants rendered Plaintiff unable to do anything herself to prevent—Defendant[s] were deliberately indifferent to [Plaintiff's] . . . needs and safety[,]" and "failed to provide even basic assistance[.]"  [Doc. 4 ¶¶ 50-51]  Plaintiff alleges further that the "the obviousness of the danger"  "was demonstrated by some Defendants' purchase of the . . . stool[.]"  [Doc. 4 ¶ 53; Doc. 63 p. 10-11]   As to the stool itself, Plaintiff argues that it "was obviously dangerously inadequate to allow her to safely step out of the vehicle."  [Doc. 63 p. 10]

As to the Board and Casinova in his official capacity, Defendants argue that the *Complaint* fails to state a plausible Fourteenth Amendment claim because, aside from the

mere presence of the stool, the allegations do not show how the municipality[2] violated Plaintiff's constitutional rights.  [Doc. 58 p. 3-5]  As to White, Ridenour, Alcanzo, and Casinova in his individual capacity Defendants argue that they are entitled to summary judgment under the doctrine of qualified immunity because Plaintiff cannot establish that they violated a clearly established constitutional right.  [Doc. 58 p. 8]

To succeed in her conditions-of-confinement claim against any Defendant, Plaintiff must demonstrate a violation of her constitutional rights.  *Farmer* 511 U.S. at 832 (pertaining to individual defendants); *Myers*, 151 F.3d at 1320 (pertaining to municipal defendants).  Thus, the Court considers whether requiring Plaintiff, who was shackled, to maneuver the twelve-inch drop between the transport van and the floor by stepping first onto a stool presented a "substantial risk of serious harm."  *Farmer* 511 U.S. at 834.  To place this inquiry in context, the Court considers the following cases.

In *Shue v. Laramie County Detention Center*, 594 Fed.Appx. 941, 942-43 (10th Cir. 2014) a pretrial detainee brought a Fourteenth Amendment claim against his detention center based upon an Eighth-Amendment-violation theory.  The plaintiff had recently undergone leg surgery and, according to professional medical evaluations, he was restricted from all physical activity and had other limitations.  *Id.* at 942.  In advance of being transported from the detention center to a court appearance, the plaintiff and other prisoners were instructed to line up against a wall.  *Id.* at 942.  While obeying that order,

---

[2] Plaintiff's claim against Casinova in his official capacity and her claim against the Board are, in effect, legally indistinguishable.  *See Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017) ("An official-capacity claim against a municipal officer is the same as a suit against the municipality.").

the plaintiff tripped and fell over a pair of leg restraints that had been left on the floor by detention center staff. *Id.* He was injured as a result of this fall. *Id.* Reasoning that the plaintiff's allegations reflected "no more than ordinary lack of due care for the prisoner's interests or safety[,]" *i.e.*, a negligence claim, our Tenth Circuit held that the plaintiff had not suffered an Eighth Amendment violation. *Id.* at 946.

In *Braxton v. Wyandotte County Sheriff's Department*, 206 Fed.Appx. 791, 792 (10th Cir. 2006), an inmate who was shackled and handcuffed was injured as a result of falling down a flight of stairs. The inmate brought an Eighth Amendment claim on the ground that the fall was caused by the negligence of the officer that was escorting him, and by his torn and unsafe shoes. *Id.* Our Tenth Circuit summarily rejected the claims on the ground that "negligence does not constitute deliberate indifference" and "does not violate the Eighth Amendment." *Id.* at 793.

In *Dexter v. Ford Motor Company*, 92 Fed.Appx. 637, 638 (10th Cir. 2004), several handcuffed, shackled inmates were placed in a prison transport van. Although the van was equipped with seatbelts, the inmates' shackles made it impossible for them to employ the seatbelts without assistance, and those who requested assistance in fastening their seatbelts were rebuffed by the correctional officers. *Id.* One of the correctional officers drove the van. *Id.* As he speeded on the highway, he lost control of the van, which rolled, and ejected one of the inmates rendering him a quadriplegic. *Id.* Our Tenth Circuit held that the injured inmate failed to state an Eighth Amendment claim, concluding that "a failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension." *Id.* at 640-41.

Finally, in *McGee v. Adams*, 721 F.3d 474, 484 (7th Cir. 2013), a shackled inmate was required to climb, unassisted, into a van by stepping onto a milk crate. The inmate fell, suffering a minor cut on his ankle. *Id.* The Seventh Circuit rejected the inmate's Eighth Amendment claim, holding that the incident did "not provide any basis for a claim that any of the defendants were deliberately indifferent to any substantial risk of harm." *Id.* at 484-85.

The Court is not unmindful of the fact that Plaintiff suffered significant injuries as she exited the transport van, while handcuffed, leg-shackled, belly-chained with a chain connecting her handcuffs to her leg-shackles. Nonetheless, in light of the foregoing authorities, it is clear that the facts underlying her claim do not amount to a cognizable violation of the Eighth Amendment. To the extent that Defendants failed to recognize that requiring Plaintiff to exit the van unassisted created a potentially dangerous condition, this circumstance reflects a lack of due care for her safety; however it does not give rise to an Eighth Amendment claim. *Shue*, 594 Fed.Appx. at 946 (stating that mere "mere negligence" is insufficient to state a cognizable Eighth Amendment violation).

Plaintiff, having failed to establish a constitutional violation, cannot maintain her Eighth Amendment claim against Casinova in his official capacity or against the Board. *Myers*, 151 F.3d at 1320 ("[I]n order to hold a municipality liable for an employee's constitutional violations, a plaintiff must show . . . that a constitutional violation occurred[.]); *Patel*, 849 F.3d at 978 ("An official-capacity claim against a municipal officer is the same as a suit against the municipality."). Accordingly, Defendants' *Motion*

*for Judgment on the Pleadings* on Count I as to the Board and Casinova in his official capacity shall be granted.

Likewise, having failed to establish a constitutional violation, Plaintiff cannot maintain her Eighth Amendment claim against White, Ridenour, Alcanzo, and Casinova in his individual capacity. These Defendants have asserted a defense of qualified immunity which Plaintiff cannot surmount. *See Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (stating that when a defendant asserts qualified immunity, the plaintiff bears the burden of demonstrating that the official "violated a federal statutory or constitutional right"); *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016) (stating that if the plaintiff fails to demonstrate a violation of a constitutional right, the defendant is entitled to qualified immunity). White, Ridenour, Alcanzo, and Casinova in his individual capacity are entitled to summary judgment as to Count I.

**Plaintiff's Claim of Inadequate Medical Care**

Plaintiff's claim that she was deprived of the right to adequate medical care is founded on the contention that she should have received medical attention within an hour of falling. [Doc. 63 p. 12] She argues:

> an hour is more time than should be necessary to secure medical attention to someone in Plaintiff's condition. There is no bright-line standard for the delay in providing medical care necessary to constitute a Constitutional violation. Consequently, Plaintiff should be permitted to present her claim that, given the very serious medical damages she had suffered, the delay in this case should be considered to be a violation of her rights.

[Doc. 63 p. 12]

A "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000).  The "substantial harm requirement may be satisfied by a lifelong handicap, permanent loss, or considerable pain." *Shue*, 594 Fed.Appx. at 945.  Plaintiff contends that as a result of the fall she "was seriously injured . . . and required double knee replacement surgery"; and that she was "ultimately determined to be 100% disabled as a result of her knee injuries."  [Doc. 63 ¶¶ A, B]  The admissibility of these facts is challenged by Defendants; however, even assuming their admissibility, they speak to the result of the fall itself, not to the consequences of Defendants' delay in providing medical attention.  Plaintiff provides no evidence showing that she was substantially harmed *as a result of not receiving medical care within one hour of falling*.  Accordingly, Plaintiff's Eighth Amendment claim of inadequate medical care against White, Ridenour, and Alcanzo fails as a matter of law. *Holmes*, 800 F.3d at 1134-35 (stating that a plaintiff's failure to establish a violation of her constitutional rights is grounds summary judgment on the basis of qualified immunity).

## C. Count II

In Count II of the *Complaint*, Plaintiff claims that "Defendants" violated her rights under the Americans with Disabilities Act (the ADA).  [Doc. 4 ¶¶ 48-53]

### The Individual Defendants

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C § 12132.  "The term 'public entity' means . . . any State or local government" or any "instrumentality of a State . . . or local government [.]"  42 U.S.C. § 12131(1)(A), (B).  Thus, by its terms, the ADA "provides disabled individuals redress for discrimination by a public entity"; it does not provide a cause of action against individuals.  *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 2000); *see Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999) ("[T]he ADA precludes personal capacity suits against individuals who do not . . . qualify as employers" under 42 U.S.C. § 12111(5)).  Thus, White, Ridenour, Alcanzo, and Casinova in his individual capacity are not subject to liability under the ADA.  As to the individual Defendants, Defendants' *Motion for Judgment on the Pleadings* shall be granted.

**The Municipal Defendants**

To succeed in her ADA claim against the municipal Defendants, Plaintiff must prove:

(1) that [she] is a qualified individual with a disability;

(2) that [she] was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and

(3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999).  Defendants argue that Plaintiff cannot meet *any* of these three requirements.  [Doc. 70 p. 14]

The ADA defines "disability" in relevant part as "a physical or mental impairment that substantially limits one or more major life activities of such individual" including "walking [and] standing[.]" 42 U.S.C. § 12102(1)(A), (2)(A). "The ADA does not define physical impairment, but" the Equal Employment Opportunity Commission (EEOC), "exercising its statutory authority to issue regulations implementing the ADA . . . has defined the term to mean "any *physiological disorder or condition*, cosmetic disfigurement, or anatomical loss *affecting one or more body systems*[.]" *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1108 (8th Cir. 2016) (emphasis in original).

Plaintiff states that she is five feet, four inches tall, and that when she fell, she weighed 205-210 pounds and had a waist size greater than 35 inches, and was, therefore, "obese." [Doc. 63 ¶ 3] Plaintiff contends that obesity without an underlying physiological cause may be considered a disability under the ADA. [Doc. 63 p. 14] And she contends further, that because her obesity prevented her from "walk[ing] or stand[ing] for significant periods of time without pain" or without becoming tired, and also caused her "great difficulty maintaining balance while walking[,]" she was a "qualified individual with a disability" as defined in the ADA. [Doc. 63 p. 15] Plaintiff does not contend that her obesity had an underlying physiological cause.

To support the proposition that obesity without an underlying physiological cause may be considered a disability, Plaintiff relies primarily on a decision by the Supreme Court of Montana, *BNSF Railway Company v. Feit*, 281 P.3d 225 (Mont. 2012). [Doc. 63 p. 14] In *Feit* the court considered whether "obesity that is not the symptom of a physiological condition [is] a 'physical or mental impairment' as it is used in" the

Montana Human Rights Act (MHRA), a statute that was substantively identical to the ADA. *Feit*, 281 P.3d at 226, 228. In answering this question in the affirmative, the court analyzed federal law. *Feit*, 281 P.3d at 228.

The *Feit* court observed that Congress had recently amended the ADA by passing the ADA Amendments Act of 2008 (ADAAA), and in so doing Congress affirmed the purpose of the ADAAA "to reinstate 'a broad scope of protection to be available under the ADA' . . . in favor of broad coverage[.]" *Feit*, 281 P.3d at 228. Noting that, while "most federal courts to have considered the issue have held that obesity is not an impairment unless it is the result of a physiological disorder[,]" the court concluded that the passage of the ADAAA in which Congress instructed courts that "they were interpreting the ADA too restrictively" reflected a change in the law. *Feit*, 281 P.3d at 229-30. In support of its conclusion, the *Feit* court considered the following provision of "interpretive guidance" from the EEOC: "[t]he definition of the term 'impairment' does not include physical characteristics such as . . . height, weight, or muscle tone that are within 'normal' range and are not the result of a physiological disorder." *Feit*, 281 P.3d at 229. The *Feit* court reasoned that, "[b]y using the conjunctive 'and,' the regulation excludes weight from the definition of impairment only if it is *both* '*within normal range*' *and* 'not the result of a physiological disorder.'" *Id.* The court further noted that, prior to the ADAAA, the EEOC's position was that "except in rare circumstances, obesity is not considered a disabling impairment" whereas the most recent EEOC compliance manual stated, "[w]hether severe obesity rises to the level of a disability will turn on whether the obesity substantially limits, has substantially limited, or is regarded as substantially

limiting a major life activity." *Feit*, 281 P.3d at 230. On these grounds, the court concluded that "[o]besity that is not the symptom of a physiological disorder or condition may constitute a 'physical or mental impairment' within the meaning of [the] Montana Code[.] *Id.* at 231.

Our Tenth Circuit has not considered the effect of the ADAAA on the question whether obesity, not caused by a physiological disorder or condition, constitutes a disability; however the only federal appellate court to consider the issue has concluded that it does not. In *Morriss*, the Eighth Circuit Court of Appeals rejected the *Feit* court's reasoning—particularly its reading of the EEOC's interpretive guidance, stating

> [w]e disagree with [the *Feit* court's] reading of the [EEOC's] interpretive guidance. . . . [A] more natural reading of the interpretive guidance is that an individual's weight is generally a physical characteristic that qualifies as a physical impairment only if it falls outside the normal range *and* it occurs as the result of a physiological disorder. Both requirements must be satisfied before a physical impairment can be found. In other words, even weight outside the normal range—no matter how far outside that range— must be the result of an underlying physiological disorder to qualify as a physical impairment under the ADA.

*Morriss*, 817 F.3d at 1109. The *Morriss* court further rejected the *Feit* court's reliance on "Congress's general policy statements in the ADAAA as support for an expansive interpretation of 'disability.'" *Morriss*, 817 F.3d at 1110. Observing that "Congress did not express any disagreement with judicial interpretations of the term 'physical impairment,'" the court reasoned that pre-ADAAA case law holding that obesity qualifies as a physical impairment only if it results from an underlying physiological disorder or condition remains relevant and persuasive." *Morriss*, 817 F.3d at 1109, 1111 (citing pre-ADAAA decisions by the Second

Circuit and the Sixth Circuit holding that obesity must be the result of a physiological condition to qualify as a disability under the ADA).

In light of the well-reasoned *Morriss* opinion which determined that obesity that is not the result of an underlying physiological condition is not a "disability" under the ADA, this Court declines to adopt a contrary conclusion. However, even were the Court to adopt the holding and rationale of the Montana Supreme Court in *Feit*, it would not benefit Plaintiff in this instance. To qualify as a "disability" a condition must "substantially limit[] one or more major life activities[.]" 42 U.S.C. § 12102(1)(A). Plaintiff's own statements describing her difficulty walking and standing are admissible to the extent they describe her subjective experience; however, to demonstrate that a "condition causes limitations on major life activities" expert medical testimony is required. *Russell v. Phillips 66 Co.*, No. 16-5063, 2017 WL 1806510, at *4 (10th Cir. 2017); *Felkins v. City of Lakewood*, 774 F.3d 647, 651-52 (10th Cir. 2014). Plaintiff's non-expert statements regarding the effect obesity has on her ability to walk, stand, and maintain balance are insufficient to overcome summary judgment on the ground that Plaintiff is not a qualified individual with a disability. *Id.* at 651.

For the foregoing reasons, Defendants' Motion for Summary Judgment as to Count II against the Board and Casinova in his official capacity shall be granted.

**D. Count III**

**Plaintiff's *Monell* Claim**

Count III of the Complaint is a *Monell* Claim for the deprivation of civil rights based upon a theory of inadequate supervision and training. [Doc. 4 ¶¶ 59-67] "[A] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). Plaintiff has not shown that her constitutional rights were violated. As such, Defendants' *Motion for Summary Judgment* as to Count III shall be granted.

**I.      *Defendant Detention Center's Motion to Dismiss Count 1 of Plaintiff's Complaint [Doc. 60]***

Document 60, filed January 5, 2017 is a *Motion to Dismiss* filed by "Defendant" Roosevelt County Detention Center. As grounds for its *Motion*, the Detention Center alleges that it "is not a suable entity." [Doc. 60 ¶ 3] Plaintiff acknowledges the validity of the Detention Center's contention as the reason that she did not name the Detention Center as a Defendant, nor did she serve the Detention Center with papers. [Doc. 64] Rather, Plaintiff sued the Board. [Id.]

Insofar as the Detention Center is not a party to this matter, its Motion is ineffective, and shall be denied as moot. *See* Fed. R. Civ. P. 12(b) (allowing *a party* to bring a motion to dismiss).

**CONCLUSION**

      **IT IS THEREFORE HEREBY ORDERED that**

**(1)** *Defendants' Motion for Pleadings, Motion for Summary Judgment and for Qualified Immunity and Memorandum of Support* filed January 5, 2017 [Doc. 58] is **GRANTED**; and

**(2)** *Defendant Detention Center's Motion to Dismiss Count 1 of Plaintiff's Complaint* filed January 5, 2017 [Doc. 60] is **DENIED as MOOT**.

**SO ORDERED** this 26th day of September, 2017 in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**